## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

| | |
|---|---|
| MATTHEW PIETRAS<br><br>*Plaintiff*,<br><br>v.<br><br>STAGEZERO LIFE SCIENCES, INC.,<br><br>*Defendant*. | Civil Action No.:  3:23cv706 |

## COMPLAINT

Matthew Pietras ("Plaintiff") brings this action against Defendant, StageZero Life Sciences, Inc. ("Defendant"), for violations of Plaintiff's rights under the Virginia Payment of Wage Act ("VPWA"), Va. Code Ann. § 40.1-29.

In support, Plaintiff alleges as follows:

## THE PARTIES

1. Plaintiff is an adult resident of Darnestown, Maryland. Plaintiff was employed by Defendant as a Chief Financial Officer and Chief Operating Officer from August 28, 2021 to May 23, 2022 (hereinafter the "relevant period"), when he resigned. During his employment with Defendant, Plaintiff was paid an annual salary of $330,000.00 on a bi-weekly basis.

2. During the relevant period, Plaintiff was an employee of Defendant within the meaning of the VPWA (Va. Code Ann., § 40.1-2) because Defendant suffered or permitted him to work. Plaintiff was also an employee within the meaning of the VPWA because in consideration for the wages that Defendant promised to pay him, he was "permitted, required or directed by [Defendant] . . . to engage in any employment directly or indirectly." Va. Code Ann. § 40.1-2.

3. Defendant is incorporated under the laws of the Commonwealth of Virginia and its principal place of business is in Virginia (8751 Park Central Drive, Suite 200, Richmond Virginia 23227). Defendant was Plaintiff's "employer" as that term is defined within the VPWA (Va. Code Ann., § 40.1-2) because, through its agents, owners, and officers, it employed the Plaintiff directly, it suffered or permitted him to work, it treated him as a W-2 employee, it set his rate of pay, it set the terms and conditions of his employment, it maintained employment records for him, it paid his wages, it had authority to hire and fire him and it violated the VPWA by failing to pay him the contractually-promised wages for his work. Moreover, at all relevant times, Defendant was a "corporation" which was "doing business in or operating within . . . [the] Commonwealth [of Virginia] who employs another [in this case Plaintiff and other staff] to work for wages, salaries or on commission." Va. Code Ann. § 40.1-2.

## SUBJECT MATTER JURISDICTION

4. The jurisdiction of this Court is based upon diversity of state citizenship. *See* 28 U.S.C. § 1332(a)(1). Defendant is a citizen of the Commonwealth of Virginia because it is incorporated there and has its principal place of business there. Plaintiff, on the other hand, is a citizen of the State of Maryland. In addition, the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

**PERSONAL JURISDICTION**

5. This Court has specific and general personal jurisdiction over Defendant under Virginia's long-arm statute, Va. Code Ann. § 8.01-328, because it regularly conducts business in the Commonwealth of Virginia, its principal place of business is in Richmond Virginia and Plaintiff's claims arise directly out of Defendant's contacts with the Commonwealth of Virginia or relate to those contacts.

**STATEMENT OF FACTS**

6. Plaintiff was employed by Defendant as a Chief Financial Officer and Chief Operating Officer from August 28, 2021 to May 23, 2022. During that time, Plaintiff supervised the personnel located at Defendant's office in Virginia.

7. On July 23, 2021, prior to beginning his employment with Defendant, Plaintiff signed a written employment contract with Defendant. The contract provided, *inter alia*, that Plaintiff was to be paid an annual salary of $330,000.00 in bi-weekly increments and that he would receive 10 paid holidays per year and 15 days of Paid Time Off ("PTO") per year. Under the terms of the contract, the PTO would accrue at the rate of approximately 4.62 hours per pay period. The written agreement further provided that the terms of the agreement shall be governed by the laws of the Commonwealth of Virginia and that, in the event of any dispute between the parties, they are required to file any civil action in the federal and/or state courts sitting in Richmond Virginia.

8. Plaintiff performed his duties from August 28, 2021 to May 23, 2022, when he resigned. On May 27, 2022, Charlene Thomas, a Human Resources Manager of Defendant and an authorized agent of Defendant, wrote an email to Plaintiff stating the following:

> I have confirmed with Jim [Howard-Tripp, Defendant's President], and we should use the date on your resignation letter, May 23rd.

The email serv[es] as confirmation that you were not paid your earned compensation for payrolls May 6th and May 20th. The company owes you the following:
- May 6th and May 20th Compensation: Gross - $25,384.62/Net - $11,108.81
    - Two contributions of $825 were deposited in your 401k account. Your 5/6 deposit was on 5/18 and 5/20 deposit on 5/27
- June 3rd: May 16th – 23rd Compensation (48 hours) Gross: $7,615.39; Accrued PTO: 46.46 (PTO payout up to 40 hours) Gross $6346.16
    - Total Gross $13,961.55 / Net $6,611.12

9. Therefore, as Ms. Thomas's email confirmed, at the conclusion of Plaintiff's employment with Defendant, it owed Plaintiff $39,346.17 which included unpaid salary of $33,000.01 and unpaid accrued but unused PTO (40 hours) of $6,346.16. Defendant did however, pay two installments into Plaintiff's 401k account for two pay periods (April 18 to May 1, 2022 and May 2 to May 15, 2022). Those 401k payments total $1,650.00. Thus, the total wages owed to Plaintiff after the 401k deposits was $37,696.17.

10. Several months had passed since Plaintiff's separation and Plaintiff had not received the $37,696.17 that Defendant agreed was owed to him. So, on September 8, 2022, Plaintiff wrote an email to Ms. Thomas and James. R. Howard-Tripp, Defendant's President, asking when the $39,346.17 would be paid. That same day, Mr. Howard-Tripp wrote the following email back to Plaintiff: "We are finalizing the funding now. Will not be long and we can pay you out. Will check with Jahrrell on all else and get back to you."

11. Two months passed since Mr. Howard-Tripp's email and Plaintiff heard nothing. So, on November 15, 2022, Plaintiff wrote an email to Ms. Thomas and Mr. Howard-Tripp, asking when he could expect his pay. On November 16, 2022, Mr. Howard-Tripp responded with the following: "We are funding right now and will announce in the next short while. We will then let you have the timeline to get you fully current. Thanks for being patient with us."

12.     Plaintiff then waited another month and when he failed to receive his pay, he wrote another email to Ms. Thomas and Mr. Howard-Tripp asking if it was possible to be paid before the end of December 2022. Plaintiff did not receive an immediate response and on December 19, 2022, wrote another email asking for a definitive date when he would receive his back pay. Plaintiff did not receive a response to either of his December 2022 emails and on March 13, 2023, he wrote another email to Ms. Thomas and Mr. Howard-Tripp again inquiring about Defendant's plans to pay him. In response, Mr. Howard-Tripp phoned Plaintiff and indicated that Defendant would provide Plaintiff with a plan to pay him at the end of March 2023. After hearing nothing by March 31, on April 3, April 5, and April 13, Plaintiff wrote three emails to Mr. Howard-Tripp asking when Defendant would pay the balance of his backpay. On April 14, Mr. Howard-Tripp replied that he and Ms. Thomas would get back to Plaintiff that day. Later that day, Ms. Thomas wrote an email to Plaintiff indicating that payments would begin with the June 2, 2023 payroll cycle. However, on June 14, 2023, Ms. Thomas emailed Plaintiff informing him that the payments would not begin until the June 16 pay cycle. But on June 14, Ms. Thomas informed Plaintiff that his backpay payments would be delayed to an unspecified date.

13.     On June 28, 2023, Plaintiff wrote yet another email to Ms. Thomas, Mr. Howard-Tripp and Carl Solomon, Defendant's then-interim Chief Financial Offer, again inquiring about his back pay. Ms. Thomas responded on June 29 by indicating that she did not know when payments would begin. Plaintiff wrote follow-up emails on July 25, August 2, and August 18. On August 18, 2023, Mr. Howard-Tripp responded that he expected to begin payments at the end of the month of August. Ater hearing nothing by the end of August, Plaintiff again made inquiries on September 1 and 11, 2023. On September 12, Mr. Howard-Tripp wrote back indicating that Defendant was in the middle of financing and might be able pay the entire amount at once. When pressed further by

Plaintiff about when payment might be made, Mr. Howard-Tripp indicated that it might be at the end of the following week, which would have been approximately September 22, 2023. However, no payments of any kind have been received by Plaintiff from Defendant.

## COUNT I
## VIOLATIONS OF THE VPWA

14. Plaintiff repeats and incorporates by reference all allegations set forth above.

15. At all times relevant to this Complaint, Defendant was Plaintiff's "employer" within the meaning of the VPWA because, Defendant was a "corporation" which was "doing business in or operating within . . . [the] Commonwealth [of Virginia]" and it "employ[ed] another [in this case Plaintiff and other staff] to work for wages, salaries or on commission."

16. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendant within the meaning of the VPWA.

17. Plaintiff had an employment contract with Defendant which required Defendant to pay Plaintiff an annual salary of $330,000.00 in bi-weekly increments and to provide him with PTO of 15 days per year, for which Plaintiff would be entitled to a payout of up to 40 hours of accrued but unused leave remaining at the time of his separation.

18. At the conclusion of Plaintiff's employment with Defendant, it owed Plaintiff $39,346.17 which included unpaid salary of $33,000.01 and unpaid accrued but unused PTO (40 hours) of $6,346.16. Defendant did however, make two $825.00 payments into Plaintiff's 401k account for two pay periods (April 18 to May 1, 2022 and May 2 to May 15, 2022). Those 401k payments total $1,650.00 and are an offset to the wages owed.

19. Under the terms of the agreement between Defendant and Plaintiff, Defendant was required to pay Plaintiff's salary on May 6, May 20 and June 3, 2022 and it was required to pay

Plaintiff's accrued but unused PTO (up to 40 hours) on June 3, 2022, the first regular pay day following Plaintiff's separation. Defendant breached the agreement by paying only $1,650 of Plaintiff's wages for those pay periods. To this day, Defendant has failed to pay Plaintiff the remaining $37,696.17 that is owed to him.

20. Defendant breached its contract with Plaintiff by failing to pay his salary for the period of April 18 through May 23, 2022 (with the exception of the two 401k payments) and by failing to pay him for up to 40 hours of his accrued but unused PTO. By breaching his contract in this way, Defendant also violated § 40.1-29 of the VWPA.

21. Defendant knowingly, willfully, and intentionally violated Plaintiff's rights by failing to pay him the wages that he earned. In email correspondence with Plaintiff, Defendant's Human Resources Manager, Charlene Thomas, acknowledged, in writing, that Defendant owed Plaintiff a total of $39,346.17 for his wages, less the $1,650 paid to his 401k account and that it failed to pay the wages. And Defendant's agents, Ms. Thomas and Mr. Howard-Tripp, acknowledged through emails, that it not only breached the agreement to pay the wages, but that thus far, it has failed to rectify it.

22. Defendant is liable to Plaintiff pursuant to the VPWA for the unpaid wages ($37,696.17), an additional amount equal to double the unpaid wages as liquidated damages ($75,392.34) – a total of $113,088.51 – along with interest on the wages owed at the annual rate of 8% and litigation costs and attorneys' fees.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant him the following relief:

a) enter a judgment against Defendant and in favor of Plaintiff, based on Defendant's violations of the VPWA, in the amount of $113,088.51 (which includes the back wages and double the back wages in liquidated damages), plus interest on the wages at the annual rate of 8% running from the date the wages were owed;

b) enter judgment against Defendant and for the Plaintiff, in the amount of his litigation costs and reasonable attorneys' fees incurred in this action; and

c) enter judgment for the Plaintiff for any additional and further relief that the Court may deem just and proper.

Respectfully submitted,

*/s/Matthew B. Kaplan*
Matthew B. Kaplan VSB No. 51027
The Kaplan Law Firm
1100 N Glebe Road, Suite 1010
Arlington, VA 22201
Phone: (703) 665-9529
Email: mbkaplan@thekaplanlawfirm.com
*Attorney for Plaintiff*

October 25, 2023